HEARD NOVEMBER TERM, 1878.

## POOL *vs.* DIAL.

It is competent for the Court, in equity cases, to review the findings of a Referee upon questions of fact and reverse the same.

Where an instrument requiring a seal is produced in Court with a seal opposite the name of the signer, and no suspicious circumstances appear upon the face of the instrument or otherwise, the *onus* is upon the party objecting to the introduction of the instrument to shew that it was not under seal when signed.

Where secondary evidence of the existence and contents of a record are introduced, without proof of its loss or destruction, and no objection is made at the time to the want of such preliminary proof, such objection cannot afterwards be made.

A compromise made by a trustee, without leave of the Court, sustained, it appearing that the compromise was just, fair, proper and for the best interests of the estate.

BEFORE KERSHAW, J., AT LAURENS,            TERM, 1878.

Action by Mary V. Pool and Albert Pool, her husband, against Allen Dial.

The case will be fully understood from the statement upon which the appeal was heard and the decision of the Circuit Judge.

The statement is as follows:

The facts conceded on both sides in this case are as follows: Allen Dial was appointed guardian of Mary V. Glenn, now Pool, in 1854, and on 31st January, 1855, gave his bond in the penalty of $12,000, conditioned for the performance of his duties as such guardian. The said Mary V. was born in March, 1847, and intermarried with John H. Little in 1862, being then about sixteen years of age. In 1875 Little died. In 187– she intermarried with the co-plaintiff, Albert Pool. William H. Glenn, the brother of Mary V., was appointed trustee of her estate in 187–. Early in the year 1873 he relinquished the trust—his final return being in July, 1873, stating, among other things, that he had turned over to Little, as trustee, a note for $2,500 on one Hudgens. In 1867 John H. Little and Mary V., his wife, filed their bill in the Court of Equity against the defendant Dial, as guardian, for account, &c. On 20th December, 1873, Dial made an agreement with Little, who styled himself trustee of his wife, to compromise her claim against Dial for the sum of $1,650. Of this sum, $200 was paid in cash by Dial to Little, and the balance of $1,450 was paid by Dial to J. W. Fowler, for Little, on 17th January, 1874, and afterwards turned over to him. Nothing further has been done in the suit in equity above mentioned. The said Mary V. petitioned the Court of Common Pleas for Laurens County, in February, 1877, reciting that Glenn, and afterwards Little, had been her trustee, and asking for the appointment of the plaintiff, Albert Pool, to that office. The Clerk of the Court, on reference to him, found the petition correct, and, on his recommendation, Pool was appointed. In 1875, after Little's death, Mary V., as his administratrix, sued said Hudgens on a note payable to Little as trustee, and prayed to have the proceeds of such suit settled to her sole and separate use. This action was commenced in August, 1877, for the purpose of having an account of Dial's guardianship, and of compelling him to pay over what should appear due upon such proceeding. The defendant pleaded the compromise above described. There is no record of the appointment of Little as trustee. There is no return from him as such trustee.

The facts in dispute are as follows: Whether John H. Little attached his seal to the agreement of compromise; whether he was ever trustee of the said Mary V.; whether the said Mary V. ever derived any benefit from the said compromise, and, if so, what; whether she by any means induced the said compromise, and, if so, how.

The questions of law in issue are: Whether the said Mary is estopped by the evidence of Little being her trustee, and of his making the compromise, from asserting the claim set forth in the complaint.

The Referee found that Little did not affix his seal to the agreement to compromise; that Little was never appointed trustee, and was wholly without authority to make a compromise of Mary V.'s rights; that Mary V. never contributed, actively or passively, to the compromise; that she was never benefited by the compromise; and that the proceedings referred to did not in law estop her from denying the trusteeship and going behind the acts of Little and claiming her estate of Dial, irrespective of his payments to Little. He therefore recommends judgment against Dial for the sum of $6,132.37, found due by the account taken upon Dial's returns and the conclusions above stated.

His Honor Judge Kershaw sustained exceptions to this report, and overruled the finding of the Referee in regard to the seal affixed to the compromise and also the finding in regard to the appointment of Little as trustee. And he also decided that the facts established estopped the plaintiffs from denying that Little was trustee. And he further decided that the compromise was proper. He in consequence ordered the complaint to be dismissed, with costs, against the plaintiffs.

The plaintiffs appealed.

*Ball, Pope & Watts*, for appellants.

*Todd & Furguson, Simpsons & Holmes*, contra.

January 18, 1879. *Per curiam*, McIVER, A. J.

We concur fully in the decision of the Circuit Judge, and, for the very satisfactory reasons therein given, the judgment of the Circuit Court is affirmed.

The following is the decision of the Circuit Judge:

KERSHAW, J. This case came on to be heard before me on exceptions to the report of J. F. J. Caldwell, Esq., Referee, (to whom were referred for a hearing all the issues of law and fact,) filed by defendant's attorneys, upon various grounds stated therein. The defendant, Dial, was the guardian of the plaintiff, Mary. In 1866 she was the wife of one John H. Little, and joined her then husband in a petition to the Court of Equity for the appointment of a trustee to recover her estate and for a settlement of the same upon terms that do not distinctly appear in the papers. Pending this petition, after a decree for a settlement, but before the appointment of a trustee, the same parties filed a bill in the same Court against the defendant, Dial, reciting the foregoing proceedings and praying that he account as guardian and pay over the funds in his hands as such to such trustee as should be appointed, or, if none, then to pay the same into Court. This bill was filed March 22, 1867. In June, 1867, the defendant filed an answer thereto, wherein, among other matters, it is stated that in the Fall of 1863 (the plaintiff, Mary, being then the wife of said Little, with whom she eloped in 1862, being then short of seventeen years of age,) application was made to defendant for a settlement with his said ward for her estate in his hands; that he agreed to settle, and made arrangements with money and a statement of his accounts accordingly, and, being thus prepared, waited until January following to make the settlement, and then was informed that nothing but South Carolina bills would be received in such settlement; whereupon, it being impossible to procure such bills, defendant, under advice, invested the funds of his said ward, or so much as she would be entitled to on settlement, in seven-thirty Confederate Treasury notes, to wit, the sum of three thousand seven hundred dollars, ($3,700,) which he reported and returned in his annual accounting to the Commissioner, and still held them, regarding that the best he could do under the circumstances. On the 20th day of December, 1873, the said suit being then pending and no progress appearing to have been had therein, the said Little entered into an agreement with the defendant to compromise the suit upon the payment to him of sixteen hundred and fifty dollars, ($1,650,) of which two hundred were paid in cash and the remainder to be paid on or before the 15th day of January, 1874. This agreement was in writing and con-

cluded thus: "And on the payment of said sum the above case to be discontinued and the said Allen Dial released from all further claim as guardian of Mary Little." It was signed " J. H. Little, Trustee," and opposite his name was written in brackets the word " seal " in the handwriting of the person who drew the paper. The paper was signed in presence of two witnesses, one of whom testified that he witnessed the signature of the paper by Little, with the other subscribing witness, R. P. Todd,—the witness testifying being W. H. Glenn, who was unable to say whether or not there was a seal to the paper when signed. Upon the original paper is endorsed a receipt of J. H. Little, (per Fowler,) dated 14th January, 1874, for $1,450 in full of " the within compromise," witnessed by R. P. Todd, Esq., and it is established that the money was paid to Little. The complaint herein was served August 4th, 1877. It simply states the guardianship, the arrival at maturity and marriage of complainant, Mary, with her co-plaintiff, and the failure to account by defendant, praying that he account and pay over the amount found due to the plaintiff, Mary.

The answer of defendant, duly filed, admits the guardianship, maturity and marriage as alleged, and claims that he has been released and discharged from said accounting, stating that the interest of the plaintiff in the hands of defendant had been settled, by the order of the Court of Equity, upon the said Mary. Upon the application of herself and John H. Little, her then husband, William H. Glenn, the brother of plaintiff, Mary, was appointed trustee under said order and accepted the appointment, and subsequently John H. Little was substituted in his stead and compromised the said claim of plaintiff, Mary, with her full knowledge and consent, and that of her brother and former trustee, the said William H. Glenn, setting up the release hereinbefore described. The exceptions to the report mainly complain that the Referee did not allow full force and effect to the release as a discharge of the defendant. It was rejected by the Referee on several grounds:

1. Because it was not shown that the seal appended to the instrument was upon it when it was signed. This is a question of fact, which, it is urged by plaintiffs' counsel, this Court cannot review, and in support of that proposition several cases are cited, which, however, only hold that the *Supreme Court* of the State is not a Court of appeals in cases at law, but assumes jurisdiction only for the correction of errors of law in cases of that character. It is

very different in equity Courts; and when the testimony is in writing, as in this case, the Court is as competent as the Referee to pass upon questions of fact, and there is no question of the power or propriety so to do when a report is heard upon exceptions.— *Gee* vs. *Hicks*, Rich. Eq. Cas., 20; *Dewitt* vs. *Atkinson*, 6 S. C., 142. The general rule upon questions of this kind is, that "if a contract is regular on its face the burden of proof is on those who assail such regularity."—6 Whar. Ev., 13, 14. Here there was no question that the paper was signed. When produced, it had a seal attached, plainly written, and enclosed in a scroll in the usual manner, and in the same handwriting as the body of the paper. It was acted on by both parties, and the maker of the instrument received under it all the benefit of the contract. Without the seal it could not have the effect which was its chief purpose. Clearly the burden of showing that the seal was fraudulently attached after the execution of the paper was upon the plaintiff. In *O'Cain* vs. *O'Cain* (1 Strob., 404,) the subject is fully discussed, and it is conceded there that when a party signs his name to an instrument having already plainly written upon it words, marks or letters importing a seal, his intention to seal is sufficiently indicated, even when the instrument does not demand a seal in order to give it effect. The point also is covered by the principle involved in the following passage from 1 Whar. Ev., 629: "When in a written contract *inter vivos* alterations or interlineations appear about which there is nothing suspicious, the presumption is that they were made before the execution of the instrument; hence the burden of proving that they were made after the execution falls upon the assailant of the instrument." And in the further proposition: "If there is nothing suspicious on the face of the instrument, but the alteration is one which appears to accord with the object of the instrument, then we should.say that the burden of proving bad faith in this respect is upon the party asserting bad faith." Upon the same principle it is held that when any document purporting to be and stamped as a deed appears or is proved to be or have been signed and duly attested, it is presumed to have been sealed and delivered, although no impression of a seal appears thereon.—Steph. Dig. Ev., 100, and authorities there cited. The Court, therefore, is constrained, upon reason and authority, to hold that the instrument in question was properly sealed and executed by the said Little.

2. The next ground upon which the Referee avoids the effect of the release is that the proof is not sufficient to establish that the said Little was the trustee of the plaintiff, Mary. There was no direct proof of the appointment or substitution of Little to the trusteeship vacated by Glenn—that is, no recorded evidence of such substitution was produced, nor was there any proof tending to show that such a record ever existed and was thereafter lost or destroyed. The defendant resorted to other and secondary evidence without thus having laid the foundation for its introduction; but this was done, and the evidence admitted and heard without objection at the time by the plaintiffs' counsel. "Testimony legal in form, pertinent to the issue, and received without objection, cannot be stricken out by the Court merely because the foundation for its admission by preliminary inquiry has not been made."—*U. S.* vs. *Holmes,* 1 Clifford, 98. The reason given by Starkie in his treatise (page 432) is that if the objection had been made at the time the adversary might have supplied the omission. In *Richardson* vs. *Wood* (4 Strob., 59,) it is said: "It is every day's practice to receive secondary evidence if not objected to. If objections to such evidence were not made at the proper time they should be considered waived." The evidence, having been received without objection, must be considered as if the foundation had been laid in the regular mode required.

The testimony offered to show the trusteeship of Little was as follows:

(*a*) Record of an action entitled Mary V. Little, as administratrix of John H. Little, deceased, against R. H. Hudgens, commenced 20th December, 1875, on a note payable to John H. Little, trustee, secured by mortgage of certain lands stated in the complaint to have been the consideration of the note, "which was money due the said John H. Little, trustee of Mary V. Little, for the purchase of the above described mortgaged property." The complaint prays, among other things, that "whatever amount is collected on the said sealed note be ordered to be paid over to whatever trustee may be appointed by the Court for the said Mary V. Little in the place of the *deceased trustee, the said John H. Little.*"

(*b*) Defendant also introduced a certified copy of an account on file in the office of the Judge of Probate of Laurens County of a "settlement by W. H. Glenn, trustee of the estate of Mary V.

Little, wife of John H. Little, July 14, 1873," in which is the entry: "Turned over to John H. Little, trustee of Mrs. Mary V. Little, *this day appointed*, a note on R. H. Hudgens, dated, &c., &c., for $2,500." The paper was sworn to and subscribed in the presence of C. Lark, Judge of Probate.

(c) Also an office copy from the Court of Common Pleas of a petition on file in the Clerk's office, wherein these plaintiffs recite that an order had been heretofore made by the Court of Equity creating a trust over the property of Mary V., the plaintiff, appointing all her estate derived from her grandfather and through her guardian, Allen Dial, who held her funds derived from other sources, to her sole and separate use, and ordering that the marital rights of her then husband, or any future husband, should not attach or be liable to any debts that they might contract. That Ludy H. Little was appointed the trustee, who never gave bonds. H. H. Glenn was then appointed the trustee; was afterwards removed, *and John H. Little appointed, &c.* "That the said estate now consists of a tract of land in Laurens County, now in possession of R. H. Hudgens, which was inherited from the grandfather of your petitioner, Mary V. Pool, and *chose in action which will probably realize five hundred dollars.*" The petition prayed the appointment of Albert Pool, the plaintiff here, a trustee of the fund. An order was therefore made referring it to M. E. Babb, the Clerk of the Court, "to ascertain the truth of the facts stated in the petition, and report a suitable person to be appointed trustee," &c. February 12th, 1877, the Referee reported that he finds the statements in the petition true, and that Albert Pool is a suitable person to be appointed trustee, &c. Thereupon an order of Court was made appointing said Pool trustee for said Mary.

Here are solemn instruments containing admissions of the plaintiffs that Little was the trustee of the separate estate of the plaintiff, Mary; an official act of the Judge of Probate, the officer to whom the trustee accounted, recognizing the turning over of the trust estate by Glenn, the former trustee, to Little as his successor. If secondary evidence is to be considered at all, it is difficult to see how it could be doubted that this was sufficient in the present action to establish the fact that Little was the trustee. It is entirely satisfactory to my mind, and I conclude, therefore, that John H. Little was the trustee of the plaintiff, Mary, at the time when he undertook to make the compromise in question. The only cir-

cumstance that would tend to throw any doubt upon the fact in my mind is that the Court of Equity long since laid down the rule that the husband would not be appointed the trustee of the wife.— *Ex parte Hunter*, Rice Eq., 293; *Dean* vs. *Langford*, 1 Rich. Eq., 427. But it seems to have been disregarded in practice of late; and in this very case it appears that the present husband of the plaintiff, Mary, has been appointed by the Court as trustee in the place of her former husband; and I do not find, therefore, that the fact established by the evidence is negatived by the presumption arising from the rule referred to.

(*d*) Another ground upon which the Referee rejects the release is that if the said John H. Little was a trustee, he had no right to compromise the suit. It may be conceded that a trustee of this character possesses no such right unless authorized by the instrument creating the trust. Ordinarily, no doubt, it is the duty of the trustee, in a proper place, to apply to the Court for authority to make such a compromise; and in every case in which he fails to do so and acts without authority he takes the risk upon himself of satisfying the Court that he acted, under the circumstances, for the best interests of the trust estate. Where he does so satisfy the Court the compromise will be sustained.—*Bacot* vs. *Heyward*, 5 S. C., 445; Lewin on Trusts, 417.

Upon looking into the pleadings of the case compromised with reference to such matters affecting the question growing out of the condition of the country as the Court will take notice of, I entertain no doubt that the Court, if appealed to, would have sanctioned the compromise made. If the statements made in the answer to the bill of Little and wife were true, then there was imminent danger of the loss of the entire claim against defendant. There is no charge of bad faith in the transaction; the circumstances tend to show knowledge of the settlement on the part of the *cestui que trust* and the receipt of a portion of the fund arising from the same; it does not appear that she made any objection, and in the proceedings whereby she sought the appointment of her present husband a trustee she makes no allusion to this claim against the defendant, but declares that the trust estate now consists of a tract of land and " choses in action that will probably realize five hundred dollars," which is an implied admission and recognition of this settlement. Under these circumstances the release must be sustained.

It is, therefore, ordered, adjudged and decreed that the decision of the Referee be reversed and the complaint dismissed, and that the plaintiffs pay the costs and disbursements herein of the defendants, to be adjusted by the Clerk of the Court.